v. United States Department of the Interior, and Sally Jewell, Secretary of the Interior, State of Alaska Appellant, Ms. Nelson for the Appellant, Ms. Peterson for Appalachian Appellant, Ms. Peterson for Appalachian Appellant, Ms. Nelson for Appalachian Appellant, Ms. Peterson for Appalachian Appellant, Ms. Peterson for Appalachian Appellant, Ms. Peterson for Appalachian May it please the Court, I'm Anne Nelson and I represent the State of Alaska in this appeal. The District Court's judgment in this case authorizes the Secretary to administratively recreate the trust land system of Alaska Native land ownership that Congress specifically considered and ultimately and repeatedly rejected in unequivocal and comprehensive terms. The Alaska Native Claims Settlement Act, ANCSA, was groundbreaking legislation that replaced trust land and tribal regulatory Ms. Nelson, that's the merits, right? Yes, Your Honor. Court directed you to address the question of mootness in your brief. Yes. Did you? Address the issue of mootness in the brief? No. Yes, Your Honor, we did. In your blue brief, in your opening brief? The mootness motion filed, the motion to dismiss on mootness grounds by the United States was not filed before the State filed its opening brief. The U.S. filed the motion to dismiss for mootness after the State filed its opening brief and after they had adopted a final regulation that they assert trumps the District Court's judgment on this issue. Let's start with mootness. As I stated, the United States asserts that the State's appeals moot because the challenged regulation no longer exists. Right. As you know, a matter is moot when the Court can provide no effective remedy because a party has already obtained the relief it has sought. The State seeks appellate review of the District Court judgment, which resolved the questions in this case as a matter of law, not as a matter of secretarial discretion. The State did plead for declaratory relief in the form of a judgment that ANCSA prohibits the creation of new trust land in Alaska. How does an intervening defendant plead for its own independent claim for relief? Wouldn't you have to file a counterclaim to do that? Right. You didn't file any counterclaim. Well, Your Honor, the... Am I right? You didn't file any counterclaim? There was no counterclaim filed. All you had were defenses. Pardon? All you had were defenses because you were intervening as a defendant in litigation. That's right. That's true. So that's not an affirmative claim for relief that would keep the case alive. The legal question... There's nothing to defend against anymore. There is no counterclaim filed in this case. The legal question is still very much a live controversy between the parties, and the Court does have the jurisdiction to settle this. But wait a minute. Why? Between which parties? Interior chose not to appeal and instead chose to change the regulation, right? Yes. So your dispute is with Interior, not the plaintiff in this case. The State was granted intervention as a matter of right, and that decision by the District Court was not appealed. The District Court found that the State had Article III standing. What does that have to do with the question I asked you? In other words, what? I just don't understand what relief we could grant in this case, given Judge Millett's question to you about... The case is measured, the issue before us is measured by the complaint, right? And the complaint challenged the Alaska exception. The complaint challenged the Alaska exception. And that's all the case is about. You defended the Alaska exception. District Court invalidated, Interior chose not to appeal and changed the regulation. So isn't your dispute now with the Interior Department and its regulation? This case is over. No, Your Honor. The dispute here is with the District Court's judgment that found that ANCSA did not prohibit the creation of new trust land in Alaska. But that judgment was adjudicating the legality of a regulation that no longer exists, a provision of regulation that no longer exists. The regulation still exists, Your Honor. The new regulation is exactly the same as the old regulation, minus the Alaska exception. If that's the case, why are we here? They can't be the same. It's minus the Alaska exception, right? That's what the case is all about. All it does, all the new regulation does is implement the District Court judgment, which was unnecessary because the District Court had already severed and vacated the Alaska exception. Well, not totally unnecessary. They did a new final agency action with a new reasoning. They said we're not doing this because of what the District Court said. We're doing this for our own reasoning. And so I get that you don't like the 2014 final agency action. And you may very well be able to file, certainly attempt to file, an APA lawsuit challenging that 2014 final agency action. But it seems to me that's where your beef, to the extent you have one, is the 2014 action, not with a regulation that doesn't exist anymore, the old one. Am I right in that? That line of reasoning, A, presumes that the Secretary has the discretion to trump statutory language, which is not true. Agencies only have the authority that Congress gives them. But when we normally want to adjudicate the lawfulness of the 2014 action, because that's the only one that could have any relevant effect going forward, to have that agency record before us in case we think language is ambiguous and need to defer the Secretary's interpretation? Well, the question is a pure statutory construction question that does not turn on the agency's interpretation. Well, I'll bet you they think differently. I'm sure they do. The issue is whether it's a Chevron 1 or a Chevron 2, and that issue is only going to be relevant to the 2014 regulation, which is not before us. Also, this is an Article III question we're raising. It's jurisdictional. The question of mootness is jurisdictional. I'm sorry, Your Honor. I said the question of mootness is jurisdictional. Yes, it is, Your Honor. It may be that it might make sense to litigate that issue here for some reason, although I haven't seen in your brief why that is. But the point is this is a jurisdictional question, and the question really is, is this case constitutionally moot? This case is not constitutionally moot, Your Honor. The declaratory relief would declare the legal rights and relations of the parties, and irrespective of any regulatory action on the Secretary, settle this matter. If you look through the tribe's complaint, which is where we look for the authority to issue declaratory relief, what claim in their complaint seeking declaratory relief is still alive? The tribes did not even mention ANCSA or did not bring forth ANCSA as part of their case, which is why the state intervened. It seems to me, I understand your point being that there's a legal ruling out there that we think may apply to 2014 as much as it did to the prior regulation, and I take it that's the harm you have is you disagree with this legal ruling of the district court, and it's reading of ANCSA and the ability to take land into trust under either version of this regulation, pre-2014 and post-2014. Yeah, absolutely. The state is harmed by that judgment of the district court. Isn't it a normal course of action if a case has been mooted while you're appealing for the person who considers themselves harmed by the existence of that pending district court judgment to file a motion for Muncie-Moore vacature? Isn't that how you get relief as an appellant? The state did not do that. Right. It could have. You chose not to. The state did obtain injunctive relief, which further demonstrates the harm to the state and the interest the state has. You mean the state pending appeal, is that the injunctive relief? Yes. It enjoins the secretary from placing any land into trust pending this appeal. Pending the appeal, but you didn't seek Muncie-Moore vacature at the district court decision. We do raise this issue in the brief. In the reply brief. The U.S. also agrees that should the court find it lacks jurisdiction, that vacatures be appropriate. Setting aside whether you file a motion, suppose we conclude that it's moved and that it's moved because of the doctrine of voluntary secession and vacant on our own. Doesn't that give you everything you want? You don't have a district court decision. It isn't binding anyway, but you don't have a district court decision out there. And next time the secretary takes Indian land into trust in Alaska, the state's free to challenge it under the regulation. Just explain to me why that's a problem for the state of Alaska. This litigation's nine and a half years. I know that. I got that. You've been here a long time. You've been here a long time. In terms of actually state policy and dealing with this, the state feels strongly about the Alaska exception. But until the secretary invokes it again under the new regulation, what's the problem? The problem is, there are a few problems. One is the issue of judicial economy. This is a pure statutory construction question. Judicial economy goes both ways here. Sure, you could say we've got a case, and it takes a lot more judicial effort on our part to write an opinion on the merits than it does to dismiss it for moodness. Understood, Your Honor. So what else? Is your problem with the district court's decision here that it vacated the Alaska exclusion, or is your problem actually that you think it misinterpreted the statute? The latter, Your Honor. The state's appeal is based on the district court's finding that ANCSA does not preclude the creation of new trust land in Alaska. The state's position is that the secretary's rulemaking activities are irrelevant, given that the district court decided this question as a matter of law, not as a matter of discretion. The district court accorded no deference to the secretary. It's a pure legal question that, frankly, in the state's view, is very much still alive. The state still has the same harm, the same standing that the district court found when we were granted intervention as of right. And I understood your motion for intervention to be not only that you were concerned about the sovereignty implications of restoring this idea of trust land, but that you were also defending your interest as part of this settlement that ANCSA implemented. That's correct, Your Honor. The state forfeited valuable land selection priorities to which we were entitled under the Alaska Statehood Act, and the native corporations, the newly formed native corporations, were given the first pick of the withdrawn land. The state also contributed cash in the form of mineral revenue from public land that the state was entitled to under the Statehood Act that instead went into the native fund that was part of the settlement. So if this court decided the case was not moot and we disagreed with the decision of the district court, would that resolve your problem? Yes. A holding by this court that ANCSA is a comprehensive land claim settlement, that Congress has spoken unequivocally on the issue of whether trust land should be part of the native land ownership model in Alaska, and that ANCSA doesn't allow future trust land in the state and the Secretary doesn't have discretion outside of Mt. Lakatla to put place land into trust, yes, that would provide the state complete relief. But you would get the precise same relief by challenging Interior's next invocation of this, next time it seeks to bring Indian land into trust in Alaska, right? Same thing. Well, potentially. It wouldn't be any different, would it? In fact, it would be in the context of a real case. It would be in the context of a real case, but as I stated earlier, the context is irrelevant to the legal question of whether the Secretary even has the authority to consider trust land applications outside of Mt. Lakatla in Alaska. I'm confused about that answer because your argument is plain statutory language. Yes. And so the most we could do is say whether you win or lose under Chevron Step 1, but we wouldn't be able to say whether you win or lose if we thought it wasn't controlled by Chevron Step 1, that the text wasn't clear, we wouldn't even be able to address Chevron Step 2 in this case because we don't have the 2014 final agency action before us. And so you'd still have to go back and litigate that, wouldn't you? That record isn't before us. That action hasn't been challenged. So we can't really even conclusively answer that unless you only can present half the issue you'd normally litigate. Your Honor, the state's position is that the court doesn't get past Chevron Step 1 here. Congress's intent is clear and unambiguous. Well, that's your view now, Judge Millett is asking. I suppose you're wrong about that. I know that's your position. Are you conceding the regulation is not, you have no challenge to the regulation? If you win, are you conceding you can't win on Chevron Step 2? No, the state is not conceding that. No, the state is not conceding that. The state believes it would win on Chevron Step 2 as well because this is a statutory construction question. It does not have to do with the secretary's discretion. It does not have to do with her independent determination in the absence of the district court judgment. I have a different question. Is Chevron even at issue here? Chevron is usually something that we look at when the secretary or some administrative agency is interpreting its own statute, right? Its authorizing statute or some statute which gives it the authority to do some specific thing. But ANSA is a settlement that does not belong to the Department of Interior, right? That's absolutely right, Your Honor, and yes, that's absolutely right. Chevron, to the extent the other judges might want to put this case in the Chevron context and my statement that you don't get past Chevron Step 1, more recent Supreme Court jurisprudence on statutory construction dealing with agency authority has modified that Step 1 to say that the words that are at issue need to be viewed in the context of the statutory scheme and that a reviewing court needs to look at subsequent legislation to determine Congress's intent. Judge Brown was asking a very different question, which is intriguing, which is, is Chevron invoked in the statute at all? That was her question. That issue was not briefed. Yes, I realize that, but it's an interesting question. The state loves that question. And clearly, you know, as a practical matter, there's little difference between Judge Brown's question and the state's argument that Congress has clearly spoken and left the secretary no discretion. So this is not an instance where Congress has delegated a program to the secretary to implement. This is where Congress has declared, this is what the law is regarding native land ownership in Alaska. Are there any cases holding that there's no interpretive discretion under ANSA? I'm sorry, Your Honor, I misstated. Are there any cases holding that the interior has no administrative or interpretive authority under ANSA? I am not aware of cases that hold that. The Ninth Circuit in the U.S. versus Atlantic Richfield case, which is cited in our brief, does talk about the Indian canon of construction when it comes to interpreting ANSA and has held that the doctrine applies with less force because it's based on the idea that the Alaska natives would have been in a disadvantaged position with respect to negotiating the legislation. And as the Ninth Circuit points out, they, as part of the settlement, had top-notch representation. It was a three-year process, at least, in the making to reach that settlement. And what happens to under Chevron when the argument in the case is that one statute has displaced, let's even assume they don't have or only have limited or no Chevron authority under ANSA, but they certainly do under the Indian Reorganization Act. And so the statutory question is whether ANSA implicitly repealed or modified in your language the IRA. How does Chevron come in there when you've got two statutes competing for them, certainly one of which they have interpretive authority under? ANSA relieves the Secretary of having to make that determination. It has a savings clause that explicitly states that to the extent that ANSA conflicts with any other generally applicable statute, ANSA takes precedence. I have other circuits that ruled that there is Chevron deference available. The Ninth Circuit has said that they do get Chevron deference under ANSA. Okay. Anything else? Did you have one more thing you wanted to say? I don't. I wanted to answer the judge's question, though, and I'm not sure I heard the end of it. Go ahead. My understanding is the Ninth Circuit has held that Interior does get Chevron deference under ANSA. I'll leave the tribes to answer to that question. Okay. Thank you. May it please the Court. I'm Elizabeth Ann Peterson from the Department of Justice, representing the Department of the Interior this morning. This appeal is moot. The subject of this case was the validity of the Alaska exception, and the district court's decision no longer has any effect because the agency, through notice and comment rulemaking, has removed the Alaska exception, so any reversal by this court would have no effect. Even if this case were not moot, Alaska does not have a substantial stake in this litigation because the imminence of any harm to Alaska is far too attenuated under the Secretary's authority to take land into trust. Alaska's alleged harm is to sovereign interests that may or may not ever be affected, and at this time the Secretary has taken no land into trust in Alaska. So under that argument, under your standing argument, does that mean they wouldn't even have standing to challenge your 2014 final agency action? Your Honor, I think there would be a very substantial question whether they would have standing to make a facial challenge to the withdrawal of the Alaska exception. They have not attempted to do so. They don't meet the substantial risk standard of standing? Your Honor, I believe the correct standard here would be the certainly impending harm standard. Are you saying that if Alaska, I'm sorry, if Interior next year decides under the new regulations to take Indian land into trust, that Alaska would not have standing to challenge that and argue that the regulation is unlawful? No, Your Honor. They could certainly argue that the regulation is unlawful in the event that the Secretary were to implement the authority. Right. I'm just discussing the appropriateness of a facial challenge to the action to withdraw the Alaska exception, which occurred in 2014. They had a regulation that gave them essentially an immunity from trust applications, and that immunity has now been withdrawn. You both fight about rightly or wrongly, but that's now gone. So now they are at risk in a way that they weren't legally before. Why is that not an injury? Potentially, Your Honor. That case is not before this Court. They haven't challenged our rule. You asked me whether they would have standing. My answer is I'm not sure. Okay. Well, it just seems to me the argument you are making about standing, not weakness, but about standing as to why they wouldn't have standing until you actually take land into trust would apply equally to a challenge to the 2014 agency action. So that's why I was confused as to why they would have to wait if they wanted to challenge the 2014 final agency action. Our belief is that under this Court's standing jurisprudence, the imminence of the harm to Alaska is probably insufficient unless and until the Secretary actually invokes this authority and takes land into trust. That's an involved process in which the State will have the opportunity to participate. It would occur on a case-by-case, parcel-by-parcel basis. And the nature of each potential acceptance of a parcel of land into trust is going to vary from one to another. So the issue of what kinds of injury to the State might occur from the acceptance of land in trust in Alaska would be far more developed on that case-by-case basis in the context of an actual action. Does that mean under what authority the Secretary can consider and then decide to change the Alaska exception after the District Court has already vacated it? Yes, Your Honor. The Alaska exception reflected a policy position that the Department had developed in the aftermath of ANCSA. And it was the belief of the Department at that time that the authority to take land into trust had not been revoked but would probably be inappropriate as applied in Alaska. It never took a position either that it had been repealed or that it was illegal for the Secretary to invoke it. That's not my question. My question is the District Court here made a decision. It made a particular decision. I think on a statutory basis that the exclusion was inappropriate and it vacated it. So my understanding then is that that was gone. So on what basis does the Secretary take action on the Alaska exclusion when it had already been vacated? The Secretary had two options at that time. The Secretary could appeal the vacater of that portion of its regulation, which initially it did. It then chose instead to change the regulation so that that District Court decision, which it believed was incorrectly reasoned, would no longer be the basis for the absence of the Alaska exception from the regulation. So the effect of that was to allow this argument that the decision is now moot, because it's moved into the Secretary's arena, basically. But my question is, what was there for her to act upon since the District Court already vacated? That is an interesting question. There was an appeal pending from the vacater, and there is no longer anything to vacate. So whether it was vacated by the court or vacated by the Secretary, I guess is open to some question. It is no longer in existence. Let me ask you a different question then. Let's suppose that the District Court here had made a different decision and had agreed with the State of Alaska. Could the Secretary then have gone into a rulemaking and nevertheless excised the exclusion? That raises Chevron questions that are not in this record. No, it seems to me it raises something more than Chevron questions. Are you saying that even if the court had decided against the position that the Secretary is taking now, the Secretary could simply reanimate trust status in the State of Alaska? Probably not, Your Honor. But under Brand X, if the District Court were first to take a position interpreting a statute that is implemented by the Secretary, the Secretary has the responsibility to implement ANCSA. And if the District Court's interpretation of that statute were not consistent with that of the Secretary and the Secretary took a reasoned approach to changing her interpretation, it's conceivable that that premature interpretation by the District Court would not trump the Secretary's reasoned change of policy. What provision in ANCSA says that the Secretary is responsible for implementing it? ANCSA was enacted as Indian legislation. The Secretary has broad authority to implement Indian legislation. Actually, ANCSA appears in 43 U.S.C., which is the public lands title, also subject to administration by the Secretary. So, yes, the Secretary is responsible for administering ANCSA. And I see that my time is up. What's the government's view? If we think you're right about mootness, what's your view about whether we should vacate the District Court's decision? We believe the court should vacate the District Court's decision. You're on. Further questions? Thank you. Anything else? Okay. Thank you. Do not forget the intervener. Good morning. May it please the Court? I'm Heather Kendall Miller on behalf of Appellee Tribes, and at Council table is Co-Counsel Lloyd Miller. Let me respond briefly to a couple of questions since we've got limited time here, and that was your question regarding the Secretary's involvement in ANCSA. The Secretary was very involved in ANCSA. It wrote massive amounts of regulations to help implement and carry out that statute. So under Chevron deference, certainly the Secretaries would be entitled to deference at the step one level. We agree with the United States that this appeal is now moot. The United States relief is really one that they want to pursue against the United States, and my clients brought this cause of action only to address the regulatory ban within the regulatory process for lands into trust, and that ban no longer exists. Should this case nonetheless be decided on the merits, we believe that the District Court's opinion should be affirmed. Do you oppose vacature of the District Court decision under Monsignor principles? I don't oppose that, Your Honor. I recognize that that would probably be the likely outcome under precedent of this circuit. In case you have that question, the parcels of land that are at issue here, are all of them currently subject to taxation by Alaska? I know a couple of them seem to come from church entities. One of them came from a Native-respective trustee deed. I don't know if that's like an allotment or what the tax status of that is, but is some of that land at least currently being taxed, or is it already on the end from taxation for other reasons? Of the four plaintiff tribes, only one of the tribes is at risk for taxation. The state doesn't generally impose property tax. It's the local governments, municipalities, and three of our villages don't have municipal governments, so their properties are not subject to local taxes. But Haynes, Chilkat tribe, does own property that is very close to the city of Haynes, and they are concerned that their fee lands would be subject to taxation. Are they subject to taxation now? Yes. Yes, they are. What is a Native-respected trustee deed? What exactly is that? Is that a form of allotment, or what is that? There are two forms of restricted-fee lands in Alaska. One are lands that were conveyed under the Alaska Native Townsite Act, and thousands of individual townsite lots were created there, and they are held in restricted-fee status. You want to talk about Ms. Kavaraluk, who paid her land under a Native-restricted trustee deed. Yes, that is a Native townsite allotment. And she, unfortunately, lost the restrictions due to fraud, and she would like to get those restrictions put back in place. Again, I want to address a bit of the merits simply in the event that the court goes there. And we believe that this case really should be viewed from the precedent of this court that holds that later statutes cannot implicitly repeal an earlier statute unless two conditions are met. The first, that the later statute expressly contradicts the earlier statute, is therefore an irreconcilable conflict. Or second, that it's absolutely necessary to give meaning to the later statute. And we don't believe that either of those conditions are met here. ANGSTA was a settlement of aboriginal claims, and Congress did so by extinguishing those claims, but it also left in place prior enacted legal regimes, including the IRA. And nothing in ANGSTA expressly addresses the IRA, much less silently repeals it. What do you think is the effect of the savings clause? I don't believe that the savings clause... I mean, it says, you know, if this conflicts with any other provision, then ANGSTA controls. My point, Judge Brown, is that it doesn't conflict. ANGSTA can coexist side by side with the Secretary's authority under 465, and does. As I said, ANGSTA does not expressly address the IRA. It did not revoke any provision of the IRA until five years later when Congress came back through FLTMA and surgically withdrew Section 2 while leaving Section 1 in place. And that's the best evidence to support the proposition that ANGSTA did not revoke any part of the IRA. It continues in place with the exception of Section 2. The state has argued that ANGSTA is an irreconcilable conflict with the statutory regime. But, again, if you look to what Congress left in place, it left in place these other legal regimes, including the Alaska Native Townsite Act and thousands of individual townsite lots that are held in restricted fee status and distinguishable from trust lands. It left in place thousands of existing Alaska Native allotments, again, held in restricted fee. It left in place parcels in southeast Alaska in trust status. These properties combined, including Metlakatla, account for approximately a million acres of land in trust-restricted status that currently coincide with ANGSTA fee lands. Again, that's a complete answer to the state's argument that the two statutes are irreconcilable. Do you know if these lands that you're describing, were they in existence in that status before ANGSTA was enacted, or did this occur later? Many of them did take place prior, the Alaska Native Townsite Act and the 1906 Native Allotment Act. But Congress itself, in ANGSTA, authorized continued conveyance of Native allotments in restricted fee. Congress also came back and amended the Allotment Act to allow for the additional conveyance of 20,000 Native allotments to veterans that were in Vietnam at the time and could not benefit by putting in applications at that time. So clearly, again, Congress does argue... I'm just trying to understand, were they... I mean, obviously, settlements often grandfather in some existing state affairs and retain the status quo. So I was just trying to understand if that's what was happening or if, in fact, they're doing that now. Well, it's a combination of both, Your Honor. Both existing allotments and townsites prior to ANGSTA that were left in place and then the authorizations of continued conveyances of Native allotments after ANGSTA. We believe that Judge Contreras' opinion approached this question correctly and did not find that the two statutes were irreconcilable and likewise found that it was not absolutely necessary to revoke any part of the IRA to give meaning to ANGSTA. And we believe that decision was correctly decided. And if this Court chooses to address the merits, we would hope that you would affirm that decision. Thank you. Thank you. Did Ms. Nelson have any time left? Ms. Nelson did not have any time left. You can take a minute if you'd like it. Thank you, Your Honor. First of all, the U.S. argued that the type of this case would not be ripe and not be unmuted until the state suffered injury and that type of injury would depend on the specific parcel of land. And just to be that was at issue in a particular trust acquisition. And just to be clear, the state's position is that as a settling party to ANGSTA, that no land should be taken into trust. So the fact-specific determination of what parcel and what interest affected that is a separate analysis from the state sovereign. What do you mean as a settling party? It's like a breach of the settlement agreement if the Secretary were to do this? Is that your position? Yes, absolutely. The state was a settling party to ANGSTA. So the state forfeited valuable land selection priorities and also forfeited income to which it was otherwise entitled to from mineral revenue from public land. You couldn't bring that type of claim or injury in this court. You'd have to take that under the Tucker Act Claims Court in the Federal Circuit, right? A breach of settlement agreement or contract with the U.S. government can't be heard here, can it? That jurisdictional question is interesting, Your Honor. It was not briefed in this case. The state raises it as a, I think, highly persuasive, equitable argument that I never questioned whether it's anything that can be adjudicated here. It's certainly evidence that the state has suffered injury, that the state has harmed. That's a separate question from movements, correct? You could have injury, but a case could still be moved, right? Yes, Your Honor. The Secretary did in 1980 take the position that ANGSTA prohibited the acquisition of further trust land in Alaska, and that's in the preamble to the 1980 rule. With respect to the question regarding the Secretary lacking authority to implement ANGSTA, the Secretarial's duties with implementing ANGSTA were largely ministerial and administering the land selection process. The native corporations now own that land in fee and have the responsibility for administering that land. That was the crux of the ANGSTA settlement. ANGSTA is a land claim settlement. It only addresses the federal government's trust responsibility with respect to tribes with respect to land. With respect to the tribes' argument that ANGSTA continues or preserved the authority for restricted fee and trust acquisitions for individuals, I would point out that ANGSTA specifically authorized the processing of pending applications. It gave those applicants the choice of either pursuing that process or taking their home site lot in fee under Section 13 of ANGSTA. And the other matter that the tribes referenced was the later statutory authority to extend the process for veterans. If you've gone way over, you can finish your sentence and we'll be done. Thank you, Your Honor. The state believes that this matter is not moot. There's very much a live controversy between the parties here, as has been evidenced by the exhaustive briefing and argument by the parties. We hope that the court finds that this is not moot and reverses the district court judgment. Thank you. Thank you all. The case is submitted.
judges: Tatel, Brown, Millett